ROBERT C. SCHUBERT (No. 62684)
WILLEM F. JONCKHEER (No. 178748)
NOAH M. SCHUBERT (No. 278696)
KATHRYN Y. MCCAULEY(No. 265803)
**SCHUBERT JONCKHEER & KOLBE LLP**
Three Embarcadero Center, Suite 1650
San Francisco, California  94111
Telephone:      (415) 788-4220
Facsimile:      (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
nschubert@sjk.law
kmccauley@sjk.law

*Attorneys for Plaintiff and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RACHEL GREENBAUM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOOM VIDEO COMMUNICATIONS, Inc.<br><br>Defendant. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

Upon personal knowledge as to her own acts, and based upon her investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiff Rachel Greenbaum ("Greenbaum"), on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      This is a class action brought on behalf of persons in the United States who used the Zoom Video Communications, Inc. ("Zoom") application.

2.      Defendant Zoom provides video communications services using a cloud platform for video and audio conferencing, collaboration, chat, and webinars. These services are accessible through a desktop application available for Windows and macOS and a mobile application available for Android and iOS. Each Zoom application permits a user to join a meeting with or without signing in with a Zoom account.

3.      As alleged herein, Zoom has been slow to address significant security flaws and vulnerabilities in its platform. Software design choices and security flaws have made Zoom users vulnerable to harassment and privacy invasions. Furthermore, Zoom has falsely and misleadingly represented the security and privacy capabilities of its platform.

4.      This class action is brought on behalf of Zoom users to prevent Zoom from continuing these deceptive, invasive, and unlawful business practices and further seeks an award of damages (actual, statutory, and/or punitive), reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief appropriate under the circumstances to remedy Zoom's wrongdoing alleged herein.

## PARTIES

5.      Plaintiff Greenbaum is, and at all times relevant hereto has been, a citizen of the State of California. Prior to installing the Zoom application, Greenbaum believed that Zoom implemented adequate and proper security measures to protect users' privacy and secure videoconferences. Prior to installing the application, Greenbaum was not aware that Zoom would share her personal information with third parties. If Greenbaum had known about Zoom's failure

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   to implement adequate and proper security measures or Zoom's practice of sharing her personal

2   information with third parties, Greenbaum would not have installed the application.

3       6.      Defendant Zoom is a Delaware corporation, with its principal executive offices

4   located at 55 Almaden Boulevard, 6th Floor, San Jose, California 95113. Zoom provides video-

5   communications services through a cloud-based platform. The cornerstone of Zoom's platform is

6   Zoom Meetings, a service which provides meeting participants with video, voice, chat, and content

7   sharing across mobile devices, desktops, laptops, telephones, and conference room systems. These

8   services are accessible through a desktop application available for Windows and macOS and a

9   mobile application available for Android and iOS. Each Zoom application permits a user to join a

10  meeting with or without signing in with a Zoom account. Zoom also offers services such as Zoom

11  Phone, Zoom Chat, Zoom Room, Zoom Conference Room Connector, Zoom Video Webinars, and

12  Zoom for Developers.

13                          **JURISDICTION AND VENUE**

14      7.      This Court has original jurisdiction over this action pursuant to the Class Action

15  Fairness Act, 28 U.S.C. § 1332(d), because at least one class member is a citizen of a state other

16  than that of Zoom, and the aggregate amount in controversy exceeds $5,000,000, exclusive of

17  interest and costs.

18      8.      This Court has personal jurisdiction over Zoom pursuant 18 U.S.C. § 1965(a)

19  because Zoom maintains its headquarters in San Jose, California, and thus resides, is found, and

20  transacts its affairs in this District.

21      9.      Venue is proper in this District under 28 U.S.C. § 1391 because Zoom maintains its

22  headquarters in this District, Zoom conducts substantial business in this District, Zoom has

23  intentionally availed itself of the laws and markets of this District, and Zoom is subject to personal

24  jurisdiction in this District.

25                          **INTRADISTRICT ASSIGNMENT**

26      10.     Zoom maintains its headquarters in San Jose, California, which is within the County

27  of Santa Clara. As such, this action may be properly assigned to the San Jose division of this Court

28  pursuant to Civil Local Rule 3-2(e).

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**FACTUAL ALLEGATIONS**

***Zoom Has Prioritized Usership Growth Over Security and Privacy Protections***

11.     Zoom provides video-communications services through a cloud-based platform. The cornerstone of Zoom's platform is Zoom Meetings, a service which provides meeting participants with video, voice, chat, and content sharing across mobile devices, desktops, laptops, telephones, and conference room systems. These services are accessible through a desktop application available for Windows and macOS and a mobile application available for Android and iOS. Each Zoom application permits a user to join a meeting with or without signing in with a Zoom account.

12.     In recent months Zoom has experienced exponential growth in usership stemming from the recent outbreak of the COVID-19 virus and widespread shelter-at-home orders. As hundreds of millions of people in the United States have been directed to stay at home, Zoom has emerged as the go-to business and social platform for video conferences, increasingly used by many for work, education, telemedicine, and recreational purposes. Four months ago, Zoom was a niche business tool with 10 million daily users.[1] Today it has emerged as a fundamental online utility, with 300 million daily users.[2] As of April 2, 2020, Zoom's cloud-meetings service was the top free application in the Apple App Store in 64 countries, including the United States.[3] In March of 2020, nearly 600,000 people downloaded the application in a single day.[4]

13.     As demand for the Zoom application has surged, the company has been slow to address significant security flaws and vulnerabilities in its platform. Software design choices and security flaws have made Zoom users vulnerable to harassment and privacy invasions. According to some privacy experts, the company has valued the ease of use and fast growth over instituting default user protections.[5]

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

[1] https://www.nytimes.com/2020/04/08/business/zoom-video-privacy-security-coronavirus.html (last visited April 23, 2020)
[2] https://www.nytimes.com/reuters/2020/04/23/business/23reuters-zoom-video-commn-encryption.html (last visited April 23, 2020).
[3] https://www.nytimes.com/2020/04/02/technology/zoom-linkedin-data.html (last visited April 23, 2020)
[4] https://www.nytimes.com/2020/04/20/technology/zoom-security-dropbox-hackers.html (last visited April 23, 2020)
[5] https://www.nytimes.com/2020/04/02/technology/zoom-linkedin-data.html (last visited April 23, 2020)

14.     These privacy matters have garnered the attention of multiple state attorneys general, who have banded together to scrutinize the company's privacy and security practices.[6] For instance, in a letter to the company dated March 30, 2020, New York Attorney General Letitia James expressed her concern that "Zoom's existing security practices might not be sufficient to adapt to the recent and sudden surge in both volume and sensitivity of data being passed through its network."[7]

15.     Zoom was a service originally designed for businesses—to make it easy for company employees, sales representatives, and clients to connect through virtual meetings. As growth has increased exponentially and usership has diversified in clientele and function, however, the company has not implemented adequate security and privacy measures to protect users. In an interview with the New York Times on April 7, 2020, Eric Yuan, Zoom's Chief Executive Officer admitted that his "greatest regret was not recognizing the possibility that one day Zoom might be used not just by digitally savvy businesses but also by tech neophytes."[8] "We were focusing on business enterprise customers," Mr. Yuan said. "However, we should have thought about 'What if some end user started using Zoom'" for nonbusiness events, "maybe for family gatherings, for online weddings." He added: "The risks, the misuse, we never thought about that."[9]

16.     These security flaws have recently been highlighted by the prevalence of "zoombombing": the malicious practice of hijacking Zoom meetings with displays such as pornography, white supremacist imagery, and threatening language. Zoom's lax privacy and security measures have enabled internet trolls to hijack meetings and harass users.

17.     According to Jonathan Mayer, an assistant professor of computer science and public affairs at Princeton University, "It's a combination of sloppy engineering and prioritizing growth."[10] Indeed, Zoom CEO Eric Yuan admitted to the New York Times that "Zoom never felt

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

[6] https://www.politico.com/news/2020/04/03/multiple-state-ags-looking-into-zooms-privacy-practices-162743 (last visited April 23, 2020)
[7] https://www.nytimes.com/2020/03/30/technology/new-york-attorney-general-zoom-privacy.html (last visited April 23, 2020)
[8] https://www.nytimes.com/2020/04/08/business/zoom-video-privacy-security-coronavirus.html (last visited April 23, 2020)
[9] Id.
[10] https://www.nytimes.com/2020/04/02/technology/zoom-linkedin-data.html (last visited April 23, 2020)

CLASS ACTION COMPLAINT                    4

the need until now to rigorously examine the platform's privacy and security implications for consumers."[11] Mr. Yuan further admitted that his drive to open access to Zoom during the pandemic sometimes moved faster than the platform's privacy protections.[12] As a consequence, Zoom users have experienced substantial security and privacy invasions.

18.     These security and privacy invasions are so pervasive that many governments, businesses, and educational entities have banned use of the application. These entities include—among others—the U.S. Senate[13], Google[14], and many school districts throughout the country.[15]

***Zoom Fails to Notify Users That It Shares User Information with Facebook***

19.     According to a Motherboard report published on March 26, 2020, the iOS version of the Zoom application has sent user data analytics to Facebook, without user notification or consent.[16] Zoom shares this information with Facebook even where Zoom users do not have a Facebook account.[17]

20.     Although Zoom's user privacy policy states that the company may collect user's "Facebook profile information (when you use Facebook to log-in to our Products or to create an account for our Products)," the policy fails to disclose that when downloading and opening the application, Zoom connects to Facebook's Graph API.[18] The Graph API is the main way developers share information with Facebook. According to Motherboard, the Zoom application notifies Facebook when the user opens the application and shares details with Facebook such as the user's device, time zone, city, and phone carrier. A unique advertiser identifier is then created by the user's device which companies can use to target a user with advertisements. In a statement

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

[11] https://www.nytimes.com/2020/04/08/business/zoom-video-privacy-security-coronavirus.html (last visited April 23, 2020)
[12] *Id.*
[13] https://www.reuters.com/article/us-zoom-video-commn-privacy-senate/u-s-senate-tells-members-to-avoid-zoom-over-data-security-concerns-ft-idUSKCN21R0VU (last visited April 23, 2020)
[14] https://www.forbes.com/sites/johanmoreno/2020/04/09/google-bans-employees-from-using-zoom/#4846a418770f (last visited April 23, 2020)
[15] https://www.engadget.com/2020-04-05-school-districts-ban-zoom-over-security.html (last visited April 23, 2020)
[16] https://www.vice.com/en_us/article/k7e599/zoom-ios-app-sends-data-to-facebook-even-if-you-dont-have-a-facebook-account (last visited April 23, 2020)
[17] *Id.*
[18] *Id.*

to Motherboard, Zoom confirmed that it had engaged in this data collection practice.[19]

21.     Zoom's privacy policy failed to notify users about these data collection procedures and implied that only Facebook profile information would be collected when users logged into Zoom through their Facebook accounts. Zoom's failure to provide accurate disclosures to its users about sharing their data and Zoom's failure to implement adequate security protocols violates users' privacy and is deceptive and misleading.

### Zoom Falsely Advertises That Its Platform is End-to-End Encrypted

22.     Zoom markets and represents to users that its platform is end-to-end encrypted when, in fact, it is not. End-to-end encryption ("E2E encryption") is widely understood as the most private form of internet communication, protecting conversations from all outside parties.[20] In E2E encryption, data cannot be accessed by anyone other than the true sender and recipient.

23.     Zoom markets and represents on its website, in its security white paper, and on its user interface within the application that its service is end-to-end encrypted. However, Zoom's platform is transport encrypted, which is significantly different than end-to-end encryption.[21] In fact, according to a Zoom spokesperson and despite the company's representations, "currently, it is not possible to enable E2E encryption for Zoom video meetings."[22]

24.     In transport encryption, the connection between the Zoom application on a user's computer or phone and the Zoom server is encrypted in the same way the connection between a web browser and online post is encrypted, *i.e.* the technology that webservers use to secure HTTPs websites.[23] Unlike E2E encryption, in transport encryption the video and audio content is not fully private; it can be viewed and accessed by Zoom. Thus, when a Zoom user enters a meeting, the content of that meeting may stay private from anyone spying on wi-fi, but it is not private from Zoom and its representatives.

25.     Without E2E encryption, Zoom has the technical ability to spy on private video

---

[19] *Id.*
[20] https://theintercept.com/2020/03/31/zoom-meeting-encryption/ (last visited April 23, 2020)
[21] *Id.*
[22] *Id.*
[23] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

meetings and could be compelled to hand over recordings of meetings to governments or law enforcement. These risks may be magnified by Zoom's use of data centers outside the United States. On April 3, 2020, University of Toronto's Citizen Lab reported that Zoom used servers in China to deliver data packets even when all meeting participants were located outside of China.[24] The lab raised concerns that sending encryption keys via servers in China could leave Zoom vulnerable to requests from Chinese authorities to disclose those keys.[25]

***Zoom Contains a Feature that Secretly Displayed Data From Users' LinkedIn Profiles***

26.     According to an analysis by the New York Times, Zoom contains a data-mining feature that allowed some participants to surreptitiously access the LinkedIn profile data of other users—without the users' permission or knowledge that someone was accessing that information.[26] According to the analysis, when someone signed in to a Zoom meeting, Zoom's software automatically sent the user's names and email address to a company system it used to match the user with LinkedIn profiles.

27.     This data-mining feature was available to Zoom users who subscribed to a LinkedIn service for sales prospecting, called LinkedIn Sales Navigator. Once a Zoom user enabled the feature, that person could quickly and covertly view LinkedIn profile data—such as locations, employer names, and job titles—of meeting attendees by clicking on a LinkedIn icon next to the user's name. This was true even when the user signed-in to the meeting under a pseudonym such as "anonymous." According to the New York Times' analysis, despite a user's attempt to remain anonymous, the data-mining tool could still instantly match a user to his or her Linked in Profile, in doing so disclosing the user's real name to other users and overriding that user's efforts to remain private.[27]

28.     Neither Zoom's privacy policy nor its terms of service specifically disclosed that Zoom could covertly display meeting participants LinkedIn data to other users. In fact, the user

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

[24] https://citizenlab.ca/2020/04/move-fast-roll-your-own-crypto-a-quick-look-at-the-confidentiality-of-zoom-meetings/ (last visited April 23, 2020)
[25] *Id.*
[26] https://www.nytimes.com/2020/04/02/technology/zoom-linkedin-data.html (last visited April 23, 2020)
[27] *Id.*

CLASS ACTION COMPLAINT                    7

instructions on Zoom suggest just the opposite: that meeting attendees may control who sees their real names. One section of Zoom's help center said, "Enter the meeting ID number and your display name. If you're signed in, change your name if you don't want your default name to appear."[28]

29.      The New York Times analysis also revealed that Zoom automatically sent participants' personal information to its data-mining tool even when no one in a meeting had activated the feature. In response to the report,  Zoom said it would disable the data-mining feature that could be used to snoop on participants during meetings without their knowledge. In a related blog post, CEO Eric Yuan wrote that the company had removed the data-mining feature "after identifying unnecessary data disclosure."[29]

**Security Flaws Enabled Hackers to Activate Zoom Users' Webcams Without Permission**

30.      According to some cybersecurity and privacy experts, the time for Zoom to reassess its privacy and security practices was last year when news reports revealed a security flaw in the Zoom platform that permitted cyber attackers to activate a user's webcam without permission.[30] The flaw, revealed by security researcher Jonathan Lietschuh, persisted even when a user attempted to remove the application from the user's computer.[31] Researchers discovered that the Zoom application would secretly reinstall itself and remain vulnerable to unpermitted webcam access.[32]

31.      Zoom did not address the problem until after the Electronic Privacy Information Center, a public research center, filed a complaint about the company with the Federal Trade Commission.[33] Similarly, approximately one year ago hackers revealed a major security vulnerability in Zoom's software that could permit cyber attackers to covertly control certain

---

[28] *Id.*
[29] *Id.*
[30] https://www.nytimes.com/2020/04/08/business/zoom-video-privacy-security-coronavirus.html (last visited April 23, 2020)
[31] https://www.vox.com/recode/2019/7/9/20687689/zoom-mac-vulnerability-medium-jonathan-leitschuh-camera (last visited April 23, 2020)
[32] *Id.*
[33] https://www.nytimes.com/2020/03/30/technology/new-york-attorney-general-zoom-privacy.html (last visited April 23, 2020)

CLASS ACTION COMPLAINT                                8

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

users' Mac computers. After being made aware of the issue, it took Zoom more than three months to remedy the security flaw. Zoom patched the vulnerability only after another hacker publicized a different security flaw with the same root cause.[34]

32.      Zoom itself admits that it has failed to meet the privacy and security expectations of its users. According to Zoom CEO Eric Yuan, "we recognize that we have fallen short of the community's -- and our own -- privacy and security expectations."[35] This pattern of sloppy engineering and prioritizing growth over user security has seriously compromised the privacy of Zoom users. Zoom's failure to take adequate measures to protect user security and privacy and its false and misleading statements regarding the company's privacy practices are unlawful as set forth in the claims below.

## FRAUDULENT CONCEALMENT AND TOLLING

33.      The applicable statute of limitations are tolled because Zoom knowingly and actively concealed the facts alleged above. Until the revelations were made, Greenbaum and the Class members did not know and could not have known of the information essential to the pursuit of these claims through no fault of their own and not due to any lack of diligence on their part.

## CLASS ACTION ALLEGATIONS

34.      Greenbaum brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a class of similarly situated individuals defined as follows:

> All persons who used the Zoom application in the United States (including its states, districts, and territories) (the "Class") during the applicable statute of limitations period.

35.      Additionally, or in the alternative, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), or 23(b)(3), Plaintiff brings this action on behalf of herself and a class of similarly situated individuals defined as follows:

> All persons who used the Zoom application in the State of California (the "Subclass") during the applicable statute of limitations period.

[34] https://www.nytimes.com/2020/04/20/technology/zoom-security-dropbox-hackers.html (last visited April 23, 2020)
[35] https://blog.zoom.us/wordpress/2020/04/01/a-message-to-our-users/ (last visited April 23, 2020)

36.     Excluded from the Class and Subclass are governmental entities, Zoom, any entity in which Zoom has a controlling interest, and Zoom's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedures 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

37.     ***Numerosity Under Rule 23(a)(1).***  The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court. Greenbaum, on information and belief, alleges that the Class includes millions of persons.

38.     ***Commonality Under Rule 23(a)(2).***  Common legal and factual questions exist that predominate over any questions affecting only individual members.  These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to:

    a)     Whether Zoom owed a duty of care to the Class;

    b)     Whether Greenbaum and the Class members have a reasonable expectation of privacy in the information collected by Zoom;

    c)     Whether Zoom unlawfully disclosed users' personally identifiable information;

    d)     Whether Zoom's representations and omissions regarding the privacy and security capabilities of its platform are false, deceptive, and misleading;

    e)     Whether Zoom's representations and omissions regarding the privacy and security capabilities of its platform are likely to deceive a reasonable consumer;

    f)     Whether Zoom had knowledge that its representations and omissions in advertising, specifications, and/or informational materials were false, deceptive, and misleading;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    g)    Whether Zoom's conduct constitutes violations of the laws and statutes

2 asserted herein;

3    h)    Whether Zoom's conduct caused Zoom to be unjustly enriched;

4    i)    Whether Greenbaum and the Class members have been injured as a result of

5 Zoom's conduct;

6    j)    Whether Greenbaum and the members of the Class are entitled to actual,

7 statutory, and punitive damages; and

8    k)    Whether Greenbaum and members of the Class are entitled to declaratory

9 and injunctive relief.

10    39.    ***Typicality Under Rule 23(a)(3).***  Greenbaum's claims are typical of the Class

11 members' claims.  Zoom's course of conduct caused Greenbaum and the Class members the same

12 harm, damages, and losses as a result of Zoom's uniformly unlawful conduct.  Likewise,

13 Greenbaum and other Class members must prove the same facts in order to establish the same

14 claims.

15    40.    ***Adequacy of Representation Under Rule 23(a)(4).***  Greenbaum is an adequate

16 representative of the Class because she is a member of the Class and her interests do not conflict

17 with the interests of the Class.  Greenbaum has retained counsel competent and experienced in

18 complex litigation and consumer protection class action matters such as this action, and

19 Greenbaum and her counsel intend to vigorously prosecute this action for the Class's benefit and

20 have the resources to do so.  Greenbaum and her counsel have no interests adverse to those of the

21 other members of the Class.

22    41.    ***Superiority.***  A class action is superior to all other available methods for the fair and

23 efficient adjudication of this controversy because individual litigation of each Class member's

24 claim is impracticable.  The damages, harm, and losses suffered by the individual members of the

25 Class will likely be small relative to the burden and expense of individual prosecution of the

26 complex litigation necessitated by Zoom's wrongful conduct.  Even if each Class member could

27 afford individual litigation, the Court system could not.  It would be unduly burdensome if

28 thousands of individual cases proceeded.  Individual litigation also presents the potential for

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions.  By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

42.     As a result of the foregoing, class treatment is appropriate.

**FIRST CLAIM FOR RELIEF**
**Negligence**

43.     Greenbaum, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

44.     Zoom owed a duty to Greenbaum and the Class members to exercise reasonable care in (a) handling users' personal information in compliance with all applicable laws and the terms of Zoom's privacy policy; (b) safeguarding users' personal information in its possession; and (c) ensuring security in Zoom's video conferences. Zoom had a special relationship with Greenbaum and the Class as a result of being entrusted with users' personal information.

45.     Zoom breached its duties by failing to implement and maintain reasonable or adequate security protections for users and by disclosing users' personal information to third parties, such as Facebook, without user consent.

46.     But for Zoom's actions and breaches of its duties, Greenbaum's and the Class members' information would be secure.

47.     It was foreseeable that Zoom's conduct as alleged herein would harm Greenbaum and the Class. Zoom knew or should have known that its failure to adequately protect user information would cause harm to Greenbaum and the Class.

48.     Greenbaum and the Class did not contribute to Zoom's misconduct.

49.     Zoom's breach as alleged herein directly and proximately resulted in Greenbaum's and the Class's injuries.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

50.     As a result of Zoom's conduct, Greenbaum and the Class have been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Violations of Cal. Penal Code §§ 630, *et seq.* (California's Invasion of Privacy Act)

51.     Greenbaum, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

52.     California's Invasion of Privacy Act ("CIPA") prohibits persons from intentionally, willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California. Cal. Penal Code § 631.

53.     CIPA also prohibits any person from using, or attempting to use, in any manner, or for any purpose, or communicating in any way, any information so obtained. CIPA further provides that any person who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above is punishable by fine or imprisonment. California Penal Code § 631.

54.     As described herein, Greenbaum and the Class members did not authorize Zoom to send user data analytics to Facebook and did not authorize Zoom to share LinkedIn profile information with other users. Without the consent of Greenbaum or the Class, Zoom aided, agreed with, employed, or permitted the unauthorized disclosures of users' messages, reports, or communications.

55.     At all times, Zooms' actions complained of herein have been intentional and willful, as evidenced by the design of the platform and its features enabling unauthorized data disclosure.

56.     Greenbaum and the Class members suffered harm as a result of Zoom's violations of CIPA, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the greater of five thousand ($5,000) per violation and three times the amount of

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   actual damages sustained, as authorized by California Penal Code § 637.2, and (c) reasonable

2   attorneys' fees and other litigation costs reasonably incurred.

3                                   **THIRD CLAIM FOR RELIEF**
4          **Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Unfair Competition Law)**

5          57.    Greenbaum, individually and on behalf of the Class, incorporates by reference all

6   of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully

7   set forth herein.

8          58.    California's Unfair Competition Law ("UCL) prohibits unfair competition, defined

9   as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

10  misleading advertising and any act or prohibited by [California's False Advertising Law, Cal. Bus.

11  & Prof. Code §§ 17500, *et seq.*]."

12         59.    Zoom's actions and conduct as alleged herein constitute an "unlawful" practice

13  within the definition, meaning, and construction of California's UCL because Zoom violated

14  CIPA (Cal. Penal Code §§ 630, *et seq.*), California's False Advertising Law (Bus. & Prof. Code

15  §§ 17500 *et seq.*), the California Consumer Privacy Act (Cal Civ. Code §§ 1798.100 *et seq.*), and

16  other applicable laws alleged herein.

17         60.    Zoom's actions and conduct as alleged herein constitute an "unfair" practice within

18  the definition, meaning, and construction of California's UCL because they offend established

19  public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially

20  injurious to Zoom's users. The harm caused by Zoom's wrongful conduct outweighs any utility of

21  such conduct and has caused substantial injury to Greenbaum and the Class. Zoom could and

22  should have chosen one of many reasonably available alternatives, including not sharing users'

23  information without users' consent and not representing that its platform was E2E encrypted,

24  when it was not. Additionally, Zoom's conduct is "unfair" because it violated the legislatively

25  declared policies of CIPA (Cal. Penal Code §§ 630, *et seq.*), California's False Advertising Law

26  (Bus. & Prof. Code §§ 17500 *et seq.*), the California Consumer Privacy Act (Cal Civ. Code §§

27  1798.100 *et seq.*), and other applicable laws alleged herein.

28         61.    Zoom's actions as alleged herein constitute a "fraudulent" practice within the

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

definition, meaning, and construction of California's UCL because Zoom knowingly and willfully failed to disclose all material information to Zoom users. Zoom's conduct was likely to deceive—and did deceive—consumers. Zoom's failure to disclose this pertinent information constitutes a material omission in violation of the UCL.

62.     As a result of Zoom's "unlawful," "fraudulent," and "unfair" conduct, the privacy rights of Greenbaum and the Class members were violated. Zoom's conduct directly and proximately caused Greenbaum and the Class damages. The injuries, damages, and harm caused to Greenbaum and the Class by Zoom's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Zoom knew or had reason to know that Greenbaum and the Class could not have reasonably known or discovered the inadequate security and privacy controls in Zoom's platform.

63.     Zoom's wrongful business practices alleged herein constitute a continuing course of unfair competition because Zoom markets its service in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its users. Greenbaum and the Class therefore seek equitable relief to remedy Zoom's deceptive marketing and advertising of Zoom services.

64.     Greenbaum and the Class also seek  an order requiring Zoom to make full restitution of all amounts by which Zoom was enriched through its violations of the UCL, as well as all other relief permitted under the UCL.

### FOURTH CLAIM FOR RELIEF
### Violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.* (False Advertising Law)

65.     Greenbaum, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

66.     Zoom engaged in advertising and marketing to the public with the intent to directly or indirectly induce consumers like Greenbaum and the Class to use its platform. Zoom's advertising and marketing representations regarding its end-to-end encryption were false,

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

misleading, and deceptive within the definition, meaning, and construction of California Business & Professions Code §§ 17500, *et seq.* (False Advertising Law).

67.     Zoom also concealed material information from consumers regarding the true nature, specifications, and characteristics of the privacy capabilities of the its meeting platform.

68.     Zoom's misrepresentations and omission alleged herein were the type of misrepresentations that are material, *i.e.*, a reasonable person would attach importance to them and would be induced to act on the information in making decisions.

69.     Zoom's misrepresentations and omission alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such misrepresentations may be presumed as a matter of law.

70.     At the time it made the misrepresentations and omissions alleged herein, Zoom knew or should have known that they were untrue or misleading and acted in violation of California Business and Professions Code §§ 17500, *et seq.*

71.     Unless restrained by this Court, Zoom will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business and Professions Code §§ 17500, *et seq.*

72.     As a result of Zoom's conduct and actions, Greenbaum and each member of the Class has been injured, has lost money or property, and is entitled to relief, and all other relief permitted under California Business and Professions Code §§ 17500, *et seq.*

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment/Quasi-Contract**

73.     Greenbaum, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

74.     Absent Zoom's unauthorized disclosure of users' personal information, Zoom would have had to pay Greenbaum and each member of the Class monetary compensation in exchange for their valuable personal information and consumer habits. As such, Greenbaum and other members of the Class conferred an improper windfall upon Zoom, which knew of the

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

windfall and has unjustly retained such benefits.

75.     As a direct and proximate result of Zoom's unjust enrichment, under principles of equity and good conscience, Greenbaum and the Class are entitled to full disgorgement and restitution of all amounts by which Zoom was enriched through its unlawful and wrongful conduct.

### SIXTH CLAIM FOR RELIEF
### Privacy Violation Based on Intrusion

76.     Greenbaum, individually and on behalf of the Class, incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

77.     Zoom, by collecting and disclosing Greenbaum's and the Class members' personal information without their knowledge, intentionally intruded into a realm in which Greenbaum and the Class members have a reasonable expectation of privacy.

78.     Zoom's intrusion into Greenbaum's and the Class members' privacy would be highly offensive to a reasonable person because it occurred without Greenbaum's or the Class members' knowledge or consent.

79.     By invading Greenbaum's and the Class members' privacy, Zoom has obtained moneys which rightfully belong to Greenbaum and the Class.

80.     It would be inequitable and unjust for Zoom to retain these wrongfully obtained profits and benefits at Greenbaum's and the Class members' expense.

81.     Greenbaum and the Class are entitled to restitution of the profits unjustly obtained (plus interest), as well as damages for Zoom's invasion of privacy.

### PRAYER FOR RELIEF

WHEREFORE, Greenbaum, on behalf of herself and the Class, requests that the Court order the following relief and enter judgment against Zoom as follows:

A.     an Order certifying the proposed Class under Fed. R. Civ. Proc. 23 and appointing Greenbaum and her counsel to represent the Class;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

B.  an Order declaring that Zoom engaged in the illegal conduct alleged herein in violation of CIPA (Cal. Penal Code §§ 630, *et seq.*), California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitutes negligence, unjust enrichment, and a privacy violation based on intrusion;

C.  an Order that Zoom be permanently enjoined from its improper activities and conduct described herein;

D.  a Judgment awarding Greenbaum and the Class restitution, damages (including statutory and punitive damages where applicable), and disgorgement in amounts according to proof at trial, including an award of pre- and post- judgment interest, to the extent allowable;

E.  an Order awarding Greenbaum and the Class their reasonable litigation expenses, costs, and attorneys' fees;

F.  an Order awarding such other injunctive and declaratory relief as is necessary to protect the interests of Greenbaum and the Class; and

G.  an Order awarding such other and further relief as the Court may deem necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Greenbaum demands a trial by jury for all claims and issues so triable.

Dated: April 24, 2020                    SCHUBERT JONCKHEER & KOLBE LLP

                               ____/s/ Kathryn Y. McCauley
                                  KATHRYN MCCAULEY

                              ROBERT C. SCHUBERT (No. 62684)
                              WILLEM F. JONCKHEER (No. 178748)
                              NOAH M. SCHUBERT (No. 278696)
                              KATHRYN Y. MCCAULEY (No. 265803)
                              Three Embarcadero Center, Suite 1650
                              San Francisco, California 94111
                              Telephone:      (415) 788-4220
                              Facsimile:       (415) 788-0161
                              E-mail:           rschubert@sjk.law

wjonckheer@sjk.law
nschubert@sjk.law
kmccualey@sjk.law

*Attorneys for Plaintiff and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220